UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRYSTAL C., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 19 C 2696 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Krystal C. seeks judicial review of the Commissioner of Social Security's determination that she is not disabled within the meaning of the Social Security Act. Because the ALJ's decision is not supported by substantial evidence, Krystal's motion for summary judgment or for remand [9] is granted in part and the Commissioner's request for affirmance is denied.

## BACKGROUND

Krystal was diagnosed with multiple sclerosis ("MS") in 2003 at age 20. Krystal applied for disability insurance benefits in February 2015, alleging disability beginning on July 25, 2014 due to multiple sclerosis, anxiety, depression, memory problems, back problems, tailbone pain, vertigo, and fatigue. She was thirty-five years old at the time of the hearing in November 2017. Krystal testified that her worst MS symptoms are fatigue and pain. She further testified to issues with memory and concentration. Krystal last worked in June of 2014 as a merchandise displayer at Lowe's. She has also previously worked as a cashier supervisor at Target. After she stopped working, Krystal obtained her GED and completed a class for her real estate license, but she did not pass the real estate license test.

On March 21, 2018, the ALJ issued a decision denying Krystal's application for disability insurance benefits. (R. 132-50). Following the Social Security Administration's five-step analysis for evaluating disability, the ALJ found that Krystal had not engaged in substantial gainful activity since her alleged onset date of July 25, 2014 (step one). *Id*. at 134. The ALJ next determined that Krystal suffered from the severe impairments of multiple sclerosis, mild degenerative disc disease of the lumbar spine, pseudobulbar affect (PBA), depressive disorder, and anxiety (step two). *Id*. at 134-35. The ALJ found that none of Krystal's impairments met or medically equaled the severity of a list impairment, including Listings 1.04 (disorders of the spine), 11.09 (multiple sclerosis), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive related disorders). *Id*. at 135. Applying the Paragraph B criteria, the ALJ found that Krystal had mild limitation in understanding, remembering, or applying information, moderate limitation in interacting with others, moderate limitation in concentrating, persisting, or maintaining pace, and moderate limitation in adapting or managing oneself. *Id*. at 135-36.

The ALJ then concluded that Krystal retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with several additional restrictions. (R. 137-148). Specifically, Krystal could lift up to ten pounds, stand and/or walk for fours hours in an eight-hour workday, sit for six hours in an eight-hour day, occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. *Id*. at 137. She should avoid concentrated exposure to extreme cold and extreme heat, working with hazardous machines with moving mechanical parts, driving motor vehicles, working with sharp objects, and working in high exposed places. *Id*. As to Krystal's mental impairments, the ALJ determined that she could perform simple, routine, and repetitive tasks, is able to understand, remember, and carry out simple instructions, can adapt to occasional changes in the

work setting, and can occasionally interact with the public and superficially interact with co-workers and supervisors. *Id.* Given this RFC, the ALJ determined that Krystal could not perform her past relevant work as a Displayer, Merchandise and Supervisor, Cashiers (step four). *Id.* at 148-49. The ALJ found that other jobs existed in the national economy that Krystal could perform, such as assembler, surveillance system monitor, and inspector (step five). *Id.* at 149-50. Based on this step five finding, the ALJ found that Krystal was not disabled. *Id.* at 150. The Appeals Council denied Krystal's request for review on March 25, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## DISCUSSION

Krystal asserts that the ALJ: (1) erred in her Listing 11.09 determination; (2) failed to properly weigh the medical opinion evidence, including failing to consider and evaluate the medical opinion of Dr. David Burke, a reviewing neurologist; (3) wrongly evaluated her subjective symptom allegations; and (4) failed to sufficiently account for her mental limitations in the RFC and hypothetical posed to the vocational expert ("VE"). The Court agrees that the ALJ committed reversible error by failing to consider and evaluate Dr. Burke's medical opinion. The Court further finds that the ALJ failed to adequately capture Krystal's moderate mental limitations in the RFC assessment and accompanying hypothetical to the VE. Because each of these errors requires reversal, the Court declines to address the additional alleged errors.

**A.   Dr. David Burke's Opinion**

In making the RFC determination, Krystal contends that the ALJ erroneously failed to evaluate and weigh Dr. David Burke's November 8, 2016 opinion that she is "totally restricted." (R. 578). The Commissioner's response brief does not address this omission. Krystal is correct that the ALJ should have addressed this medical opinion, and this error alone requires reversal.

3

"An ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also* SSR 96-5, 1996 WL 374183, at *3 (July 2, 1996) ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."). A medical opinion is a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [the claimant's] impairments(s), including [her] symptoms, diagnosis, and prognosis." 20 C.F.R. § 404.1527(a). In determining whether a claimant is disabled, an ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b). Moreover, "an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Krystal received short and long-term disability benefits through Cigna, and Dr. Burke completed a "Specialist Review" form on November 8, 2016 on behalf of Cigna. Dr. Burke reviewed various records in the file, including treatment records from Dr. Daniel Wynn, Krystal's long-time treating neurologist, from July 25, 2014 through June 23, 2016, and an opinion from Dr. Wynn dated June 25, 2016. (R. 577-78). As an initial matter, Dr. Burke found that Dr. Wynn's opinion was "not well supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the claim file." *Id*. at 578. However, before rendering an opinion on Krystal's functional ability, Dr. Burke contacted Dr. Wynn. *Id*. at 578. After noting that he contacted Dr. Wynn for clarification, Dr. Burke wrote:

> [Krystal] has had very refractory Relapsing Multiple Sclerosis, and underwent treatment with a new Clinical Trial MS medication (Ocrelizumab) which is

> expected to achieve FDA approval soon. She is very fatigued, and developed pseudobulbar affect and cries all of the time, she also is very depressed and is incapable of performing any work related duties.
>
> Based on her constant uncontrollable crying and emotional lability, [s]evere [d]epression and severe degree of fatigue and cognitive decline, and the fact that she had a poor response to the FDA approved Multiple Sclerosis Immunomodulating medication, this patient is unable to perform any gainful employment and is considered totally restricted at this time.

*Id*. Dr. Burke opined that Krystal is "totally restricted." *Id*. at 578.

The Court is unable to determine whether the ALJ considered this evidence because the ALJ did not mention or analyze Dr. Burke's opinion that Krystal is disabled. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (when important evidence is not mentioned by the ALJ, the Court is "left to wonder whether the [evidence] was even considered"). Moreover, if the ALJ considered and discounted the medical opinion of Dr. Burke, the Court does not know what the ALJ found lacking in his opinion. *Roddy*, 705 F.3d at 636.

The ALJ's failure to evaluate Dr. Burke's favorable opinion was not harmless. Dr. Burke's opinion is important evidence supporting Krystal's claim for disability and contradicting the RFC assigned by the ALJ. *Walters v. Astrue,* 444 F. App'x 913, 917 (7th Cir.2011) (holding harmful error exists when there is "reason to believe that an ALJ ignored important evidence"); *Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir.2010) (the court "cannot uphold an administrative decision that fails to mention highly pertinent evidence."). Dr. Burke is a source similar to Dr. Lawrence Teitel, whose opinion the ALJ assigned the "most weight." (R. 145-46). Dr. Burke and Dr. Teitel are both neurologists who reviewed medical records and submitted their opinions in connection with Krystal's receipt of disability benefits through Cigna. On September 5, 2017, Dr. Teitel opined that Krystal was not functionally limited. *Id*. at 630. Dr. Teitel wrote:

> There is no documented measured loss of ability, or contraindications, to: constantly sit, frequently stand or walk, reach at desk level, perform simple and

>firm grasping and fine manipulation; occasionally use leg or arm controls; and lift, carry, push and pull objects up to 10 pounds frequently, and up to 20 pounds occasionally. There are no documented impairments of speech, hearing, sight, or cognition.

*Id*. Like the ALJ, Dr. Teitel did not consider Dr. Burke's opinion. *Id*. at 630-31. The ALJ found Dr. Teitel's opinion consistent with the record and she gave it the "most weight." *Id*. at 145-46. In determining whether Krystal was capable of working, the ALJ should have weighed Dr. Teitel's opinion against Dr. Burke's opinion. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . .. is exactly what the ALJ is required to do.").

The ALJ's failure to explicitly address Dr. Burke's opinion is also concerning because Dr. Burke contacted Dr. Wynn for clarification regarding his opinion. (R. 146-47). Dr. Wynn is Krystal's sole treating neurologist and his treatment notes are crucial to Krystal's claim. Dr. Wynn opined that Krystal could not perform sedentary work. In the course of her analysis of the medical record, the ALJ correctly noted that Krystal saw Dr. Wynn on a regular basis for medication refills and it appears that during these visits, he performed a general physical exam. *Id*. 138. The ALJ also noted, however, that Dr. Wynn's notes are "quite cryptic and difficult to read, and reflect many aspects of the examination[s] are 'abnormal'" without "specific observations explaining how or why." *Id*. Other reviewers similarly referenced the illegible nature of Dr. Wynn's handwritten treatment notes in the course of their review of the medical record. *Id*. at 565-66, 570, 572, 580. But the ALJ did not contact Dr. Wynn before discounting his opinions based on their inconsistency with the record and lack of support. The importance of Dr. Wynn's treatment notes is highlighted by the ALJ's assignment of "slight weight" to Dr. Wynn's opinions because they are "wholly inconsistent with the record and are not supported by Dr. Wynn's treatment notes." *Id*. at 146. For example, the ALJ found that: (1) Dr. Wynn "did not support his findings with objective evidence

or explain how he reached [his] conclusion[s]" and (2) Dr. Wynn's opinions were "not supported by his examinations or the record as a whole and appear to be based on the claimant's subjective symptoms." *Id.* at 147. An ALJ may give less weight to an opinion when it is inconsistent with or unsupported by the record, but it is unclear how the ALJ made these findings given that Dr. Wynn's treatment notes are largely illegible. Because this case is being remanded, the ALJ should take the opportunity to contact Dr. Wynn for clarification of his treatment notes in order to determine the full bases for his opinions. *Lauren J. v. Saul*, 2019 WL 5864833, at *6 n.3 (N.D. Ill. Nov. 7, 2019); *Moore v. Colvin,* 743 F.3d 1118, 1127 (7th Cir. 2014) ("If the ALJ was unable to discern the basis for the treating physician's determination, then the proper course would have been to solicit additional information from [the physician]").

In sum, the ALJ found that Krystal had the RFC to perform sedentary work with additional restrictions. Dr. Burke concluded that Krystal is disabled after contacting Krystal's treating neurologist, Dr. Wynn. Unlike Dr. Burke, the ALJ's RFC determination was made without the benefit of clarification from Dr. Wynn as to the basis of his opinions. If the ALJ had credited Dr. Burke's opinion, Krystal would have been found disabled. Thus, the Court cannot conclude "with great confidence" that the ALJ would reach the same decision denying benefits if she had considered Dr. Burke's opinion. *Weaver v. Berryhill*, 746 F. App'x 574, 578 (7th Cir. 2018). On remand, the ALJ shall evaluate and weigh Dr. Burke's opinion and discuss the conflict between Dr. Burke's and Dr. Teitel's opinions so a reviewing court can assess the ALJ's rationale and afford Krystal meaningful review. *Walters*, 444 F. App'x at 918; *see also Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) (ALJs must explain "why strong evidence favorable to the plaintiff is overcome by evidence on which an ALJ relies.").

**B.      Moderate Mental Limitations**

Krystal also asserts that the ALJ failed to properly account for her moderate mental limitations. The ALJ found that while Krystal reported mental health symptoms, there was no mental health treatment in the record other than medication management by her primary care physician and generally unremarkable mental status examinations. (R. 141, 145). The ALJ cited to a July 8, 2015 mental status evaluation performed by psychological consultant David NieKamp, Psy.D. *Id*. at 141, 411-414. The ALJ noted that at the evaluation, Krystal reported experiencing symptoms of anxiety and depression, including frequent crying spells, poor sleeping patterns, poor focus and concentration, fatigue, easily irritated, poor short term memory, and a history of panic attacks. *Id*. at 141-42, 412. Dr. NieKamp noted that Krystal demonstrated a slow response rate and was easily overwhelmed when asked to calculate serial 7's. *Id*. at 413. He opined that Krystal would need assistance in regards to managing funds on her behalf as she was easily overwhelmed. *Id*. Dr. NieKamp found that Krystal displayed intact orientation to person, time, place and situation. *Id*. at 414. He stated that her "memory seemed intact with respect to immediate and remote recall of factual information and events," she "displayed appropriate thought process for a person of her age," and her "cognitive functions appear to be operating within expected developmental limits." *Id*. Dr. NieKamp concluded that "Krystal's reported psychological symptoms and behavioral history appear to be commensurate with moderate levels of depression and anxiety." *Id*. The ALJ gave great weight to Dr. NieKamp's opinion because it was consistent with the record which, "generally showe[ed] unremarkable mental status examinations." *Id*. at 146.

The ALJ also noted that Dr. Roopa Karri performed a mental status examination as part of her internal medicine examination on July 16, 2015. (R. 141, 420). Although Krystal's affect was normal and no signs of depression, agitation, irritability, or anxiety were observed during the exam,

8

Dr. Kari's impression was that Krystal had a history of depression, anxiety and memory problems. *Id.* at 420.

In addition, the ALJ relied on the state agency psychological consultants' assessments of Krystal's mental RFC, giving them "great weight." (R. 146). On July 20, 2015, Howard Tin, Psy.D., reviewed Krystal's file at the initial determination stage. *Id.* 102-03, 106-09. On the Psychiatric Review Technique Form ("PRTF"), Dr. Tin diagnosed Krystal with an affective disorder and an anxiety disorder. *Id* at 103. Dr. Tin opined that Krystal was mildly restricted in activities of daily living, moderately limited in maintaining social functioning, and moderately limited in concentration, persistence, or pace. *Id*. As to specific concentration and persistence limitations, Dr. Tin found in Section I of the Mental RFC Assessment that Krystal has moderate limitations in the ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; and (3) work in coordination with or in proximity to others without being distracted by them. *Id*. at 107. Regarding social interaction and adaptation limitations, Dr. Tin determined that Krystal was moderately limited in her ability to interact appropriately with the general public and set realistic goals or make plans independently of others. *Id*. at 107-08. Dr. Tin explained further that despite her adaptation limitations, Krystal has the "ability to respond appropriately to changes in work settings, being aware of normal hazards and travel in unfamiliar settings." *Id*.

In the narrative section of the Mental RFC, Dr. Tin noted that Dr. Karri diagnosed depression and anxiety on the most recent physical consultative examination. (R. 108). Dr. Tin also wrote that Krystal's "calculation ability, abstract thinking and judgment and insight were noted to be less than adequate" during her mental status evaluation with Dr. NieKamp. *Id*. Dr. Tin noted: "Claimant's GAF value was not estimated. Sleep was poor. Claimant has frequent crying

9

spells. Mood was unstable and . . . congruent during the examination." *Id*. Dr. Tin determined that Krystal has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, but she is capable of performing simple tasks. *Id*. As for her social interaction limitations, Dr. Tin concluded: "Claimant has difficulty in interacting appropriately with the general public and confessed that she is easily irritated and becomes anxious, so limit work [to] tasks that do not require interaction with the general public." *Id*.

On November 27, 2015, state agency consultant, David Biscardi, Ph.D, assessed Krystal's mental RFC based on his review of the record at the reconsideration stage. (R. 123-25). On the PRTF, Dr. Biscardi indicated that Krystal had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. *Id*. at 119-20. On the Mental RFC Assessment, he answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" *Id*. at 123. Dr. Biscardi rated Krystal as moderately limited in the ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number of length of rest periods. *Id*. at 123-24.

Dr. Biscardi answered "yes" to the question "Does the individual have social interaction limitations?" (R. 124). He found Krystal moderately limited in her ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. In the next section, Dr. Biscardi found that Krystal had adaptation

limitations. *Id*. He rated her moderately limited in her ability to respond to changes in the work setting and set realistic goals or make plans independently of others. *Id*. In the sections for "narrative discussion," Dr. Biscardi wrote: "depression, anxiety, see PRTF summary." *Id*. In the "MRFC-Additional Explanation" and "PRT-Additional Explanation" sections, Dr. Biscardi found that Krystal "retains the capacity to understand, remember, carry out and sustain performance of 1-3 step tasks, complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." *Id*. at 120, 125.

The ALJ also cited a neuropsychological evaluation by Eduardo Montoya, Psy.D., on September 10, 2016. (R. 142-44, 560-74). After a clinical interview, several hours of psychometric testing, and an objective measurement of personality functioning, Dr. Montoya found evidence of incomplete effort and variable performances on some measures throughout the evaluation. *Id*. at 570. Dr. Montoya stated that the results were not suggestive of a memory decline. *Id*. Dr. Montoya wrote that he was "unable to find documented evidence of brain imaging results that would suggest neuropathy or explain any changes in cognition,' but as Krystal points out, Dr. Montoya does not seem to have had the benefit of Krystal's April 29, 2015 brain MRI showing "progression of demyelination" as compared with an MRI of her brain on February 7, 2007. *Id*. at 381, 570. Given Krystal's endorsement style, Dr. Montoya found that she is "likely to function well in highly structured situations." *Id*. Overall, Dr. Montoya felt that Krystal "likely has a long-standing history of psychiatric difficulties stemming from a variety of overarching psychosocial stresses, namely remote family dynamics as contributing factors to depressive mood syndrome." *Id*. at 582. Thus, he opined that Krystal's "psychosocial stressors are likely to exacerbate her mood and pain complaints throughout adolescence and beyond." *Id*. Based on the results of the

11

neuropsychological evaluation, Dr. Montoya found that Krystal "should be able to perform workplace duties from a neuropsychological and psychological perspective" and "there are no workplace restrictions or limitations required." *Id*. at 574. The ALJ stated that she gave great weight to Dr. Montoya's opinion that Krystal's mental impairments do not preclude all work as that opinion was supported by normal mental state examinations. *Id*. at 146. However, the ALJ gave slight weight to Dr. Montoya's opinion that Krystal has no workplace limitations because that finding was inconsistent with the consultative examinations by Drs. NieKamp and Karri. *Id*.

At step two, the ALJ determined that Krystal has severe impairments of depressive disorder and anxiety. (R. 134). When assessing the severity of these mental impairments at step three, the ALJ found that Krystal had mild limitations in understanding, remembering or applying information and moderate difficulties the remaining three paragraph B criteria: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at 135-36. In her RFC assessment, the ALJ gave "great weight" to the opinions of the state agency mental consultants. *Id*. at 146. The ALJ noted that the state agency mental consultants did not have the full record and did not examine Krystal, but she found their opinions "generally consistent with the record as whole, including indications of a cooperative, pleasant individual, with good mood and affect, as well as intact memory, concentration, and attention." *Id*. As to her mental impairments, the ALJ concluded that Krystal "does have some limitations, but these do not preclude work activity." *Id*. at 146. In the RFC assessment and hypothetical to the VE, the ALJ limited Krystal to performing simple, routine and repetitive tasks, understanding, remembering and carrying out simple instructions, adapting to occasional changes in the work setting, occasionally interacting with the public, and superficially interacting with co-workers and supervisors. *Id*. at 85, 137.

12

Krystal argues that the ALJ's step five finding is not supported by substantial evidence because the RFC finding and hypothetical questions posed to the VE did not adequately account for her moderate mental deficits in concentration, persistence, and pace, interacting with others, and adapting and managing oneself that the ALJ ascribed to her. The government failed to address Krystal's argument in its response, effectively waiving the issue of whether the RFC and hypothetical properly accounted for all of Krystal's moderate mental limitations. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver."). The Court agrees with Krystal that the ALJ did not adequately address the moderate limitations in concentration, persistence, or pace and interacting with others identified by the state agency reviewing psychologists.

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.00C(3). Both "'the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). "Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019).

Generally, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace, and thus, alone, are insufficient to present the claimant's

13

limitations in this area." *Winsted*, 923 F.3d at 477. This is because the terms "simple, routine, and repetitive tasks" refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days, but "the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work." *Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017). As the Seventh Circuit has "labored mightily to explain," "the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at a speed required by a particular workplace." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

In this case, the ALJ found Krystal capable of a range of sedentary work with the following mental limitations: (1) "simple, routine and repetitive tasks"; (2) "simple instructions"; (3) "occasional changes in the work setting"; (4) "occasionally interact with the public"; and (5) "superficially interact with co-workers and supervisors." (R. 137). As the Seventh Circuit has instructed, the first two restrictions limit Krystal to unskilled work and fail to account for her moderate concentration, persistence, and pace ("CPP") limitations. *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("we have 'repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'"); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (hypothetical including "simple work instructions," "simple work place judgments," "limited to routine work" with no more than occasional changes in the work setting" "clearly" did not account for moderate limitations in CPP); *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) (restricting a claimant to "simple, unskilled" work does not sufficiently account for difficulty with memory and concentration). The ALJ did not explain how

14

merely limiting Krystal to "simple, routine, and repetitive tasks" with "simple instructions" would permit Krystal to stay on task, perform at the pace required, or maintain a sufficient level of concentration to complete a task over the course of a full workday or workweek. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2002) (limiting a claimant to unskilled work generally does not "incorporate[] a claimant's full range of CPP limitations—challenges concentrating, staying on task, and maintaining a given pace in the workplace."); *Crump*, 932 F.3d at 570 ("observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift."). Moreover, the last three mental RFC restrictions address Krystal's social functioning and adaptation abilities, not her difficulties maintaining concentration, persistence, and pace. *Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019) (only occasional changes in the work setting "primarily deals with workplace adaptation, rather than concentration, persistence, and pace."); *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) ("'Few if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence.").

Additionally, the ALJ did not discuss the specific moderate limitation findings of the state agency psychological consultants. The ALJ may not ignore Drs. Tin's and Biscardi's findings addressed in the checked boxes of Section I of the Mental RFC Assessments. *Varga*, 794 F.3d at 816 ("Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored."). Both state agency psychological consultants rated Krystal moderately limited in the ability to "maintain attention and concentration for extended periods." (R . 107, 123). The ALJ's RFC and hypothetical to the VE failed to include a moderate limitation in maintaining attention and concentration for extended

15

periods. *Id*. at 85, 137. Nor did the ALJ did explain how a limitation to simple tasks and instructions accounted for Krystal's moderate limitation maintaining attention and concentration for extended periods. *Felicia M. v. Saul*, 2020 WL 5763632, at *7 (N.D. Ill. Sept. 28, 2020). The RFC and hypothetical question did not account for Dr. Biscardi's additional findings that Krystal was moderately limited in the abilities to: (1) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance" and (2) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods." (R. 123-24). Again, the ALJ explain did not explain why she chose not to credit these restrictions relating to performing activities within a schedule, regular attendance, punctuality, completing a normal workday and workweek, and performing at a consistent pace. *DeCamp*, 916 F.3d at 676 (reversing and remanding "because the ALJ did not adequately account for limitations identified by the doctor in the check-box sections of the forms."). This error is not harmless considering the VE's testimony that three unscheduled breaks of 15 minutes during an eight-hour workday or more than one absence per month would not be tolerated in competitive work. (R. 87-88).

Krystal faults the ALJ for failing to include Dr. Biscardi's finding that she was limited to jobs involving 1-3 step tasks in the RFC and hypothetical. The Commissioner responds by arguing that nothing requires an ALJ to adopt each and every limitation opined by a medical source even though she gave it great weight. That may be true, but the ALJ must explain why certain limitations are not included in the RFC determination when such limitations are set forth in opinions the ALJ weighs favorably. *Nicole K. v. Saul*, 2020 WL 2802820, at *4 (N.D. Ill. May 29, 2020). The ALJ appeared to adopt the narrative assessment of Dr. Biscardi in total. (R. 137, 146). The ALJ stated that she accorded "great weight to the state mental consultants who opined that

[Krystal] retains the capacity to understand, remember, carry out and sustain performance of one to three step tasks" but disregarded it in making her RFC determination. *Id*. at 146. Without explanation, the ALJ restricted Krystal to performance of "simple, routine, and repetitive tasks" with no limit on the number of steps required to complete those tasks. *Id*. at 137. The ALJ may have thought that limiting Krystal to simple, routine and repetitive work encompassed the one-to-three step task limitation. But again, "'simple, routine, and repetitive' refers to 'unskilled work,' which is defined by the judgment required to perform it, not the number of steps it takes to accomplish." *Victoria T. v. Berryhill*, 2019 WL 1254928, at *2 (N.D. Ill. March 19, 2019) (*quoting Varga*, 794 F.3d at 814). Having appeared to fully endorse Dr. Biscardi's opinion in the narrative explanation section with respect to Krystal's mental impairments, the ALJ erred by failing to include the one-to-three step task limitation in the RFC and hypothetical to the VE or explain why the limitation was not adopted. *Id*. ("ALJ erred by failing to include the two-to-four step limitation in the RFC."). Moreover, it is not clear whether the jobs the VE testified Krystal can perform consist of only one to three step tasks because the hypothetical the ALJ posed to the VE did not include the one-to-three step task limitation. *Id*. at *2 n.1.

Similarly, in the mental RFC, the ALJ did not adequately account for Krystal's moderate limitation in interacting with the public. Both state agency psychologists determined that Krystal was moderately limited in interacting with the public. (R. 107, 124). In the narrative section, Dr. Tin explained that Krystal "has difficulty in interacting appropriately with the general public and confessed that she is easily irritated and becomes anxious, so limit work [to] tasks that do not require interaction with the general public. *Id*. at 108. In her mental RFC assessment, however, the ALJ found Krystal capable of occasional interaction with the public. *Id*. at 137. Thus, the RFC subjects Krystal to significantly more contact with the public than Dr. Tin allowed. Dr. Biscardi

17

found other significant social interaction limitations, opining that Krystal retained the capacity to only "interact briefly/superficially with coworkers/supervisors." *Id.* at 125. Despite giving great weight to the state agency psychologists' opinions and explicitly including Dr. Biscardi's limitation to superficial interaction with co-workers and supervisors in Krystal's RFC, the ALJ did not include a limitation to avoid interaction with the general public in the RFC. It is unclear why the ALJ declined to accept Dr. Tin's restriction to work tasks that do not require interaction with the general public. While the ALJ did find that the record as whole indicates that Krystal is a "cooperative, pleasant individual, with good mood and affect," she did not discuss how cooperative, pleasant behavior or a good mood and affect translate into an ability to occasionally interact with the general public. *Id.* at 146; *Felicia M.*, 2020 WL 5763632, at *7. Having stated that she gave "great weight" to Dr. Tin's opinion and expressly finding that Krystal was moderately limited in interacting with others, the ALJ should have provided an explanation for why she did not accept Dr. Tin's limitation to work that does not require interaction with the general public. Without any explanation for this omission, substantial evidence does not support the ALJ's determination that Krystal could interact with the general public on an occasional basis.

For all of these reasons, it is unclear how the ALJ arrived at the mental RFC findings and remand is required. On remand, the ALJ shall craft a mental RFC and pose a hypothetical question to the VE that adequately accounts for all of Krystal's documented moderate mental limitations.

## **CONCLUSION**

Based on the foregoing, Krystal's motion for summary judgment or for remand [9] is granted in part and the Commissioner's request for affirmance is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**SO ORDERED.**

Dated:  October 19, 2020

Sunil R. Harjani
United States Magistrate Judge